Argument next in number 19-2116 Batcher v. Wilkie. Ms. Helm. Thank you, your honors, and may it please the court. This is a case about preemption. Specifically, it's about the Court of Appeal for Veterans Claims or the CAVC's majority panel error in interpreting an apportionment statute, 38 U.S.C. 5307-A2, to improperly preempt state domestic relations law. The CAVC failed to consider the preclusive effect here of a state I don't think that's quite right. I don't think that's what the government is urging here, that it completely preempts state law. The issue is whether the state law governs the distributions that are being made by the VA. In other words, whether the VA has to Well, Judge Dyke, here I think there's a lot that goes on in the government's brief that is not directly applicable to the facts of this case. I agree with you that we're not discussing whether there's a general preemption for the statute here for state domestic relations law in general, but I think what the failure of the CAVC decision really to acknowledge was the specific state agreement at issue here. And so many of the cases that we talk about that are cited here, this isn't a case about a percentage distribution or where there's some vested interest that has to be adjusted. That's sort of the whole point of our argument. I don't think you're really addressing the point that I was making. It seems to me that the decision of the Veterans Court and the government's position allows the state court to make all sorts of orders about these funds once they're received by the veteran or by his spouse or former spouse in this case now. All it's saying is that that becomes a matter that has to be dealt with by the state court after the funds are distributed and the state law can't tell the Veterans Administration how to make the distributions in the first instance. Well, yes. Okay, Judge Dyke. We agree the state law can't tell the VA how to make these distributions. However, what it seems like the CAVC failed to acknowledge is that the state law order here had already covered any and all distributions that either were made or could be made going forward. That was very clear. Both parties agreed to that. Both parties were represented by counsel. And in fact, at several stages of the VA proceedings here, the VA acknowledged that as well. Twice, in fact, the department... That may be so, but once the ex-spouse gets the money, the state court can order her to pay it back potentially if that's the right construction of the state court decree. There's nothing in the Veterans Court decision or the government's position that would prevent that from happening. Why isn't that a perfectly adequate remedy for you? Well, it seems just a little... to be doing it a little backwards here. If that were the case, the Veterans Administration would be going contra to what the Supreme Court said, I believe, in Rose v. Rose, which is the VA should not be serving as some sort of a collections agency, where if an agreement is made in state court and that agreement should cover everything, past, current, and future, and then there's some adjustment that one of the parties needs to be made, that adjustment should be made at the state court level. It should not be made by going to the Veterans Court. And here what happened is Ms. Batcher went and basically sought a readjustment of the funds. We believe that any and all funds that could be distributed by the VA to Mr. Batcher were appropriately considered in the original state court stipulated agreement. And then the CAVC agreed to accord those funds and said, Mr. Batcher, a veteran, if you have a problem with this, then you can go to state court and sue for breach of contract or seek readjustment there. And our position is that's backwards from what the Supreme Court seems to have indicated should be the case in the precedent. And that Mrs. Batcher should have gone to the state court to seek adjustment. And if she believed she was entitled due to whatever circumstances of hardship that she might have put forward here to the Veterans Administration, she should have been putting that to the state court. And the state court would have been within its right as we agree with the cases that the state court isn't authorizing any sort of distribution of the better disability benefits per se. We know that's not community property. We know that's not something the state court has the right to adjust. But I think the Supreme Court's made clear multiple times and most recently in the Howell case that the state court can still take full consideration of money that might come in. Judge Clevenger, we can't hear you, I think. Can you hear me now? Yes. Yes. Yes. I'm sorry. The state court... We're losing you again. I'm sorry. Can you hear me now? You're pretty faint. Judge Clevenger, are you on a speakerphone or a handheld device? Yeah. Does that hurt on speakerphone? Yeah. If you're on speakerphone, if you just sit a bit closer. Okay. Can you hear me now? Yeah. That's much better. Yes. As I looked at the order that we have in the state court, the order in essence told the missus not to ask for any more money. It didn't order the VA not to process a claim. So I don't see a conflict at all. I mean, they're saying... The order said to her, you have no basis for asking for any more money. So she's violating the order when she asked for more money. The order doesn't say anything about barring the VA from processing a claim. Yes. Yes, that's correct. The order didn't say that. I'm not sure the order could say that. But what the order did plainly cover and that the transcript from the argument, I think, makes clear is that the agreement covered everything. It covered things that might happen in the future. And so she, in full awareness, represented by counsel, everything, agreed to that. And by so doing, she agreed that she would not then go back to another course to try and seek... We can't hear you, Judge Clevenger. Judge Clevenger? Yes. Okay. Can you hear me? Yeah, you're in and out. Okay. Well, go ahead. Proceed with the argument. Maybe if you pick up the phone and stop using the speaker, it might be clearer. Okay. Okay. Judge Clevenger? Judge Clevenger, can you hear me? Yes, I can. Okay. If the court's ready, I can resume the clock. Okay, good. Thank you. Go ahead, Ms. Helm. Okay. Judge Dyke, I think what you were saying is whether Ms. Batcher could go back and seek an apportionment under the VA regulations and statute after she had already agreed to the maintenance, health insurance, obligations, et cetera, were accounted for. Our position is that that was not the appropriate venue to do that, and the VA regional office told her that, and we believe that was correct. They examined the evidence of the record, and they clearly said to Ms. Batcher she had reached an agreement that precludes her from making any and all requests for further contribution. What's the problem that exists about dealing with this in the state court and not entangling the VA in the interpretation of these state court decrees? Why not just let the VA decide what it wants to do, and then the state court can deal with what to do about those funds once they reach the hands of the spouse or, in another case, in the hands of the veteran? What's the problem with that? Well, that's an excellent question, and I think there is a problem. And the problem was, in fact, shown by the way her request was analyzed at the BVA. And if you recall, what she did is she went and she asked for an apportionment. And under the apportionment statute, there are two forms of apportionment. You can seek general apportionment and special apportionment. And I believe this evidence demonstrates that the BVA was not in an appropriate position to make this assessment. They, in fact, said they were having trouble, and they couldn't, on the evidence before them, even tell whether the veteran was reasonably discharging his responsibility for the spouse's support. And so they essentially just jumped over the general apportionment statute because they weren't the right body to adjudicate it, and they couldn't do it on the evidence before them. And they skipped over it and went to the special apportionment statute. And the special apportionment statute will grant some apportionment if you just have a showing of hardship. And Ms. Batcher put forward a showing of hardship. And in so doing, as we said in our briefing, this sort of creates a hardship exception to New York state law. And we think it's a good example of exactly why the VA is not the evidence that a state court should look at. And as the Supreme Court has told us, there are many reasons why you would want the state court to be evaluating that sort of evidence relating to domestic relations law, to family engagement. We believe the holding in Rose v. Rose is entirely applicable here. And what the CAVC really should have done when this came up to them is they should have done a proper preemption evaluation and either explained why Rose, which I will support here, or if they thought not, you know, at least give some rationale so that you now at the federal circuit could have some basis to evaluate this potential preemption. But instead, the CAVC didn't do that. They just said, here, we're giving this to Ms. Batcher. If Mr. Batcher has a problem with it, he can go back and fight it in state court. And this sort of creates perverse incentives where the VA is ultimately going to be dragged into these things and serve as some sort of a close to being a collections agency where they'll be fighting in both courts. And our position is that this should be in the state court all along. And that's exactly what Judge Greenberg said in his dissent. As you know, the CAVC decision was a two to one. And Judge Greenberg said, these issues have been settled in state court a decade ago. The VA should not be impairing a contract sanctioned by a state court in an area of law that the Supreme Court has long held is the exclusive provinces of the state. And we cite a bevy of case law, which, of course, you're aware of, that there's a presumption against preemption for all state law governing domestic relations. And that's exactly what this is. Okay, Ms. Helm, if you want to reserve some rebuttal time, maybe we should hear from Mr. Curlin, unless my colleagues have questions. Hearing none, why don't we hear from Mr. Curlin? Certainly, I would just like to let you know that we are splitting the argument today. So my colleague, Mr. Riley, will be attending to the rebuttal portion. I understand. Mr. Curlin? Good morning, Your Honors, and may it please the court. Just to be clear, you're not saying the government's position is that the state court could order the funds received from the VA and paid to the ex-spouse here, that the state court has authority to distribute those funds or require they be repaid or whatever. Your only position, if I understand correctly, is that the state decree is not something that the VA has to concern itself with. That's correct, Your Honor. And that may be an important point of clarification here. The Veterans Court held that this case was controlled by preemptive federal law, but its approach did not place the federal special apportionment right, that is the sole issue here, in actual conflict with the alleged stipulation or contract for New York State. And so, if you look at the federal preemption issue, it's clearly the case that federal law controls here. But this case presents the flip side of the issue that the Supreme Court decided in Howell. As the Veterans Court indicated, special apportionment is its own separate federal benefit. And by its terms under 38 U.S.C. 3.451, special apportionment does not even depend on the amount of maintenance or support that has been awarded to the spouse at the state court level as a consequence. And of course, as a consequence of the supremacy clause, special apportionment cannot be extinguished any more than in Howell, the state court through contract or stipulation could have extinguished the veteran's right to waive a portion of his retirement in order to accept disability. Well, wait a moment. Now you're confusing me because that sounds as though you're saying that the federal decision on apportionment is binding on the state court and that the state court has to allow the ex-spouse to receive this money without paying it back to the veteran under the state court decree. I thought you were saying only that the Veterans Administration should do its job, make its determination, and that what happens to the money in state court is a matter that the Veterans Administration need not concern itself with. Yes, I agree with that, Your Honor, and I'm sorry if I created any confusion. I think the point I was trying to get at, and I think this is actually put very succinctly by one of Mr. Batcher's cases, the Kansas case that they cite as an example of post-Howell treatment of this issue. We don't agree with their characterization of the case, but the Kansas court in that case, in the matter of Babin at page 991, made a pretty succinct explanation of Howell. It said, Howell, quote, overruled cases relying on the sanctity of contract to escape federal preemption. Here, I think as Your Honor has articulated, the Veterans Court did not find that there was a separate federal right. It's not maintenance under New York state law. Mr. Batcher's argument that in doing so, that constituted a breach of contract, a common law effectively, state court breach of contract or breach of the stipulation that the state court had entered into in the separation proceedings. I don't think we need to get into it, but I should note for the record here that we've gone through the evidence here, and it's worth mentioning that there's absolutely nothing in the record that indicates that when the parties were entering into that November 2006 stipulation, which arose from the fact that Mr. Batcher was not paying his until right before that last November 2006 stipulation, his actual application for and receipt of disability benefits. So, I don't think we are conceding that what happened in the state court order here is that Ms. Batcher waived her right to the extent that she has a right to receive a portion of the disability benefits. But as Your Honor has articulated, that's not what the Veterans Court could or should have gotten into here. That's a common law state court breach of contract action. And in this case, the Veterans Court correctly said if that's what you believe occurred, then the appropriate remedy is to pursue that in state court. It is really reminiscent and certainly analogous to the issue that was very recently before this in the Shaley decision. We understand it's a different context that involved a state law contract having to do with the fee agreement. But the concept is the same. In that case, the appellants were arguing that the, in that case, the veteran had breached a state law fee agreement by refusing to support their EJA application. The court recognized that the veteran's right in that case and that it may very well have been. In fact, I would argue in that case, it was, you know, the potential breach was much more explicit. The contract issue specifically talked about the veteran authorizing the parties to file. And both the Veterans Court and this court recognized that the right, the federal right was the veteran's right to the could be enforced here, but, you know, merely for convenience or the fact that it helped the appellants in that case, didn't bring that state law breach of contract issue under the ambit of the Veterans Court. The same thing applies here. And although I think I heard appellants walk away from this res judicata issue, they didn't raise it. Since they briefed it, it's important to add that res judicata really can't apply here because the counterparty in this action is VA. The VA's distribution of benefits, they were not a party to either the contract stipulation or the state court proceeding. So this is just not a case of res judicata. Okay. Anything further, Mr. Carlin? Um, nothing, nothing further. We're certainly here to answer any questions that the court has. We respectfully request that the court confirm the judgment of the Veterans Court. Okay. Hearing no further questions, let's hear from Mr. Riley. I don't know how much time you have left. You may have gone over the original. He has two and a half minutes for rebuttal. Okay. Go ahead, Mr. Riley. Thank you, Your Honor, and may it please the court. To begin, I'd just like to point out a factual question that the government highlighted, which is it notes that there was no explicit discussion of Mr. Batcher's disability benefits in the state court hearing transcript. Of course, as the government is aware, Mr. Batcher had begun receiving disability benefits by that time. There's no reason to think that the disability benefits weren't in the minds of the parties at that time when they were deciding a method to end all further support and obligations, present and future, owing from Mr. and Ms. Batcher. This argument seems to me to show exactly why the VA shouldn't be resolving these issues. The state court is in a much better position to know what its decree meant, and it's better to have them decide what the decree meant rather than to force the VA to decide what the decree meant. Well, but Your Honor, as we pointed out in our opening brief at page 20, the VA is frequently called upon to interpret state court rulings or state court evidence. This is no different than the examples we cite where in Yemen v. West, the federal circuit discussed VA consideration of willful misconduct under state law or the VA looking to common law spouses under state law. There's no particular reason that VA is unable to assess this court-ordered stipulation between the parties. And if I just may, Your Honor, that's the government brings up the Sheely case again. A key difference between the Sheely case and this case is that the Sheely case focused on a purely private contract between the parties. This is a court-ordered stipulation. This is something that the parties entered into before the court and the court issued as an order of the court. The government presents no reason that VA is unable to recognize the preclusive effect of that state decree. And just one last point, I know I'm running very short here, but if VA decides as it wants to that it will refuse to concern itself with this sort of state decree, then it essentially does preempt the state law of domestic relations. It undoes what the state has done here in determining what the proper allocation of money is as agreed by the parties. That order of the state court has been undone by CABC's decision and will be undone should this court affirm. And therefore, with respect, Your Honor, if there are no further questions, we urge you to reverse the opinion of the CABC. Okay. Thank you, Ms. Helm. Mr. Riley, was this a pro bono representation? Yes, it was, Your Honor. Okay. The court thanks you for undertaking the case and thank all counsel for the argument. That concludes our session for this morning. This case is submitted. The Honorable Court is adjourned until tomorrow morning at 10 a.m.